

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed March 9, 2006

United States Bankruptcy Judge

---

FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| GSYS ENTERPRISES, INC. d/b/a § | |
| ALPHAGRAPHICS NO. 331 § | |
| § | |
| Debtor. § | CASE NO. 05-47525-DML-7 |
| § | |

### MEMORANDUM OPINION AND FINAL JUDGMENT

Before the court is the issue of which of two liens, that held by TSCA-231 Limited Partnership ("TSCA") or that held by GE Capital Small Business Corporation ("GE"), has priority with regard to certain assets of the estate of GSYS Enterprises, Inc. ("Debtor"). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(K). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 9014 and 7052.

### I. Background

The pertinent facts are undisputed. On or about September 15, 2003, Debtor, as lessee, and TSCA, as lessor, entered into a shopping center lease (the "Lease") for real property located at 1220-F Airport Freeway, Bedford, Texas 76022 (the "Premises"). Section 20.1 of the Lease grants TSCA a contractual security interest in any of Debtor's personal property located on the Premises. TSCA perfected its security interest by filing a UCC Financing Statement with the Secretary of State on September 22, 2003.

On September 13, 2003, Debtor executed a Small Business Administration note with GE. On September 17, 2003, Debtor executed a Commercial Security Agreement whereby Debtor pledged all of its equipment, inventory, accounts, instruments, chattel paper, and general intangibles to GE as security for the note. GE perfected its security interest by filing a UCC Financing Statement with the Secretary of State on September 24, 2003, two days after TSCA had perfected its interest.

On September 15, 2003, TSCA, GE, and Debtor entered into a Landlord's Subordination agreement (the "Subordination Agreement") whereby TSCA agreed to subordinate its security interest to GE's under the terms and conditions described therein. Paragraph 3 of the Subordination Agreement states that if TSCA terminates the Lease or Debtor's right to possess the Premises, TSCA must provide written notice of such action to GE. According to Paragraph 4, upon receipt of such notice GE must either (1) remove its collateral from the Premises within 14 days or (2) liquidate the collateral within 30 days. Should GE fail to remove or liquidate the collateral within the specified time periods, GE "shall be deemed to have abandoned the lien and the property and [TSCA] shall have the right to dispose of same in any manner [TSCA] deems necessary."

Debtor filed its voluntary petition commencing this bankruptcy case on July 28, 2005. By letter dated July 29, 2005, TSCA gave notice to GE of the fact that, due to Debtor's default under the Lease and prior to the filing of GSYS's bankruptcy petition, TSCA had terminated Debtor's right to possession of the Premises. This letter was received by GE on August 1, 2005. Following receipt of the notice letter, GE failed to take any action to preserve its rights in the collateral within the time periods set forth in the Subordination Agreement or even to respond to the letter.

On October 19, 2005, TSCA filed a motion for relief from the automatic stay in which TSCA asserted that its lien had priority over GE's. This motion was served upon GE, and GE did not object or respond to it. On November 29, 2005, the court entered a default order granting TSCA relief from the automatic stay. On December 5, 2005, the chapter 7 trustee filed a motion to sell certain property of Debtor's estate (the "Sale Motion") to which the liens of both TSCA and GE attached. GE filed its objection to the Sale Motion on December 29, 2005. In its objection, GE asserted that its lien had a higher priority than that of TSCA.

On January 5, 2006, the court conducted a hearing on the Sale Motion. At the conclusion of this hearing, the court granted the Sale Motion, allowing the sale to go forward with all liens on the property sold attaching to the proceeds of sale. The court reserved the question of lien priority as between GE and TSCA and directed the parties to submit briefs on this issue. Each party timely filed its brief with the court.

## II. Issue

The sole issue before the court is whether the lien of TSCA or that of GE has priority.[1]

## III. Discussion

The Subordination Agreement is governed by Texas law, which requires the use of the plain meaning rule in contract construction. *See, e.g., Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005) (citing *Vincent v.*

---

[1] The court requested briefing on the additional issue of whether TSCA's lien is avoidable by the chapter 7 trustee under 11 U.S.C. § 545. TSCA has convinced the court that its lien is not avoidable under section 545, and the court will therefore not address that issue in this opinion. However, the court points out that were TSCA's lien avoidable by the trustee, it would be preserved for the benefit of the estate pursuant to 11 U.S.C. § 551. In the absence of that scenario, the estate has no direct interest in the outcome of the instant dispute.

*Bank of Am., N.A.*, 109 S.W.3d 856, 867 (Tex. App.—Dallas 2003, pet. denied)) ("When the contract is unambiguous, the court should apply…the plain meaning of the contract language, and enforce the contract as written."). A straightforward reading of the Subordination Agreement leads to the inescapable conclusion that, absent the filing of Debtor's bankruptcy petition, GE's failure to either liquidate its collateral or remove it from the Premises after receiving written notice from TSCA that it had locked Debtor out would result in the loss of GE's lien priority *vis-à-vis* TSCA. The court must therefore hold in favor of TSCA unless, as GE asserts, the filing of Debtor's bankruptcy petition provides the court with some basis for ignoring the terms of the Subordination Agreement.

GE asserts that, in light of the fact that it did not receive notice of TSCA's having locked Debtor out of the Premises until after Debtor had filed its bankruptcy petition and the automatic stay was in effect,[2] Paragraph 4 of the Subordination Agreement should be found to be unenforceable as against public policy. GE correctly states that the automatic stay provided for by section 362 of the Bankruptcy Code (the "Code")[3] expresses as the public policy of the United States that an entity may not exercise control of property of the debtor's estate after the filing of a bankruptcy petition. *See* Code § 362(a)(3). This policy allows the debtor time to reorganize and preserves the estate for the benefit of all creditors. *See, e.g., SEC v. Brennan*, 230 F.3d 65, 70 (2d Cir. 2000). GE argues that because Paragraph 4 of the Subordination Agreement required GE to take control of certain property of the estate in violation of the automatic stay or else lose its lien priority

---

[2] The automatic stay becomes effective automatically and immediately upon the filing of a bankruptcy petition. *See* 3 COLLIER ON BANKRUPTCY ¶ 362.02 (15th ed. rev'd 2005).

[3] 11 U.S.C. §§ 101, *et seq.*

with respect to that property, the provision must be unenforceable. GE's argument is unpersuasive.

In asserting that the provision is against public policy, GE implies that Paragraph 4 of the Subordination Agreement placed it between the proverbial "rock" of violating the automatic stay and the "hard place" of losing its lien priority; however, this is not the case. Under the terms of the Subordination Agreement, GE was given 30 days to liquidate its collateral before it lost its first lien status. This 30-day window provided GE with ample time to move for and obtain relief from the automatic stay. Since the estate had no equity in GE's collateral, the trustee likely would not have opposed GE's motion, meaning GE could have obtained relief very promptly; indeed, the trustee did not oppose TSCA's motion for relief from the automatic stay with regard to the same collateral. However, not only did GE fail to file a motion for relief from the automatic stay, it also failed to respond to TSCA's motion to lift the stay in which TSCA asserted that it had lien priority over GE; nor did GE even bother to file a proof of claim in Debtor's bankruptcy case. It is disingenuous for GE, having failed to take advantage of the various opportunities with which it was presented to protect its interest in its collateral without violating the automatic stay, to now assert that the only means it had of protecting its lien priority in its collateral was to violate the automatic stay.

GE's failure to zealously protect its interests in its collateral tips the balance of the equities in favor of TSCA. Bankruptcy courts are courts of equity, and, hence, the parties to a proceeding before a bankruptcy court are subject to the dictates of equity. *See Young v. United States*, 535 U.S. 43, 50 (2002); *Pepper* v. *Litton,* 308 U.S. 295, 304 (1939); *see also United States* v. *Energy Resources Co.*, 495 U.S. 545, 549 (1990). It is a familiar

maxim that equity favors the diligent and not those who sleep on their rights. *See Williams v. Banana*, 59 F.2d 645, 647 (6th Cir. 1932); *Nordling v. Carlson*, 265 F.2d 507, 510 (9th Cir. 1958); *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp.2d 811, 814 (N.D. Tex. 2002); *Walters v. Hunt (In re Hunt)*, 146 B.R. 178, 184 (Bankr. N.D. Tex. 1992). Whereas TSCA diligently sought to protect its interests by (1) locking out Debtor from the Premises prepetition, (2) sending GE the requisite notice of the lockout, (3) filing a proof of claim in Debtor's bankruptcy case, and (4) obtaining relief from the automatic stay and allowing the chapter 7 trustee to liquidate its collateral, GE sat idle, only asserting its first priority lien position when the trustee moved to sell GE's collateral after TSCA had already obtained relief from the stay. GE's behavior since Debtor's bankruptcy filing, therefore, undermines any equitable argument for determining that GE's failure to comply with Paragraph 4 of the Subordination Agreement should not result in the loss of its lien position.

There is no legal basis for concluding that Debtor's bankruptcy filing excused GE from complying with Paragraph 4 of the Subordination Agreement. The Subordination Agreement itself contains no provision dealing with the eventuality of Debtor's bankruptcy filing and thus provides GE no relief from its obligations under Paragraph 4. GE is hardly unsophisticated when it comes to bankruptcy law; it might have negotiated terms dealing specifically with the unique circumstances that would be posed by Debtor's bankruptcy. Having failed to do so, GE cannot now expect this court to cure that failure.

The court's conclusion that GE's rights *vis-à-vis* TSCA as set out in the Subordination Agreement were not affected by Debtor's bankruptcy filing is fortified by the provisions of the Code. In drafting the Code, Congress specifically recognized and

provided for enforcement of subordination agreements. *See* Code § 510(a). Congress, when appropriate, specified how section 510(a) (and, thus, enforcement of subordination agreements) should apply when potentially in conflict with other provisions of the Code. *See, e.g.,* Code §§ 509(b)(1)(C); 726(a) and 1129(b)(1). Section 362 of the Code contains no such reference to section 510.

Moreover, Congress knew how to toll times for acting where actions would be stayed by operation of section 362(a) of the Code. Section 108(c) provides for tolling of limitations on a claim against the debtor during the pendency of a bankruptcy case. *See* Code § 108(c)(2); *cf.* Code § 108(a). In section 108(b) of the Code Congress specifically provided a 60-day extension of contractual deadlines for debtors. That Congress provided such an extension of contractual deadlines for debtors without doing the same for other parties, especially considering the relief afforded the latter by section 108(c), indicates Congress did not intend that a bankruptcy filing would affect time limits such as those imposed on GE by the Subordination Agreement.

### IV. Conclusion

For the foregoing reasons, it is hereby

ORDERED, ADJUDGED, and DECREED that TSCA's lien has priority over that of GE. The proceeds from the sale conducted pursuant to the Sale Motion are to be distributed accordingly, and the chapter 7 trustee shall submit to the court an order consistent with this opinion so providing.

### END OF ORDER ###